UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JEREMY DEAN LAYMANCE                                              PLAINTIFF

V.                           4:17CV00303 DPM/JTR

RICKY SHOURD, Deputy, White
County Sheriff's Office, *et al*.                                 DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District D.P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Introduction

This case arises from a custody dispute between Plaintiff Jeremey Dean Laymance ("Laymance"),[1] an Arkansan, and his child's great-grandparents, Sharon and John Van Compernolle (collectively, the "Van Compernolles"), who are

---

[1] Laymance was in custody at the White County Detention Center at the time he filed this *pro se* § 1983 action but has since been released. *Docs. 2, 19*.

Texans.² *Docs. 2, 23*. Laymance asserts the Van Compernolles' actions in the custody dispute led to his allegedly unlawful arrest by Defendants Sheriff Ricky Shourd ("Shourd") and Deputy Paul Hofstead ("Hofstead"), and unlawful removal of Laymance's child ("J.D.L.") from his care by Defendant Casey Walker ("Walker"), an Arkansas Department of Human Services employee. The uncontested background follows.

On February 14, 2017, the Van Compernolles petitioned the District Court of Anderson County, Texas, (the "trial court") for sole managing conservatorship of J.D.L.; the next day the trial court issued a temporary restraining order ("TRO") prohibiting Laymance from "removing the child from [the Van Compernolles]," among other restrictions. *Doc. 40-1 at 10*. On February 27, 2017, the trial court extended the TRO and set a March 3, 2017 hearing on the petition. *Id. at 13*. Laymance maintains he never received notice of the petition, TRO, or hearing. *Doc. 23 at 5-8*.

On March 2, 2017, Sharon Van Compernolle reported to Texas authorities that Laymance took J.D.L. in violation of a custody order. *Id. at 6*. Texas law enforcement investigated the allegation, including contacting a Texas Department of Child Protective Services employee who explained that the Van Compernolles

---

² Laymance sued the Van Compernolles, but they were dismissed for lack of personal jurisdiction, as were Texas Department of Family Protective Services Case Worker Felicia Hickerson, Anderson County, Texas, Sheriff Gary Taylor, Captain Ronnie Foster, and Officer Hester. *Doc. 26*.

"were seeking/had managing conservatorship" of J.D.L. *Id*. After investigating, the Texas authorities issued an Amber Alert[3] and notified the White County, Arkansas, Sheriff's Office, as Laymance's mother lived in White County. *Id. at 6-7*. White County deputies found Laymance in his car at his mother's house and held him, handcuffed, for several hours. *Id*. at 7. Laymance asked Hofstead why he was being arrested, to which Hofstead responded "[w]e are waiting for the arrest warrant from Texas to see." *Id*. Paramedics took J.D.L. "and turned him over to Defendant Casey Walker . . . upon her arrival [at] the scene." *Id.* Hofstead eventually released Laymance and apologized for any misunderstanding about the arrest because Hofstead "thought Texas had a warrant or something." *Doc. 23 at 7*.

Back in Texas, the trail court proceeded with the scheduled March 3 hearing on the petition and TRO. *Id*. at 8. The trial court found Laymance "although duly and properly notified, did not appear and wholly made default." *Doc. 40-1 at 16*. The Van Compernolles were awarded temporary sole managing conservatorship that day. *Doc. 23 at 8*. The trial court also temporarily enjoined Laymance from removing J.D.L. from the Van Compernolles, among other things. *Doc. 40-1 at 20*.

---

[3] "AMBER" means "America's Missing: Broadcast Emergency Response." "The AMBER Alert Program is a voluntary partnership between law-enforcement agencies, broadcasters, transportation agencies, and the wireless industry, to activate an urgent bulletin in the most serious child-abduction cases." https://www.amberalert.gov.

Also on March 3, 2017, a Texas judge signed a warrant for Laymance's arrest for interference with child custody. *Doc. 23 at 8*. Laymance was arrested in White County, Arkansas, pursuant to the warrant that same morning. *Id*.

Laymance filed this lawsuit on May 4, 2017.[4] *Doc. 2*.

In June 2017, the trial court entered its final order in the child custody case and granted the Van Compernolles permanent sole managing conservatorship. *Doc. 23 at 9*.

## II. Discussion

Plaintiff's claims against Walker, Shourd, and Hofstead (collectively "Defendants") remain pending. Each of them has filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).[5] *Docs. 40, 41*. In her Motion, Walker argued that Laymance's claims are barred under *Rooker-Feldman*, as well as several affirmative defenses. *Doc. 40*. Shourd and Hofstead incorporated Walker's arguments by reference. *Doc. 41 at 1*.

---

[4] After granting Laymance's motion to proceed *in forma pauperis*, United States District Judge D.P. Marshall Jr. stayed this case pursuant to *Younger v. Harris* pending the disposition of the Texas criminal charge against Laymance. *Doc. 16*. Laymance was later acquitted of the charge. *Doc. 19*.

[5] Judgement on the pleadings is "appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (internal citation omitted). Generally, "a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). In deciding a motion for judgment on the pleadings, however, a court may consider materials that are part of the public record or that are embraced by the pleadings, such as court records. *Id*.

Because *Rooker-Feldman* would deprive this Court of jurisdiction, that doctrine must be considered first. *Arbaugh v. y & H Corp.*, 546 U.S. 500, 514 (2006). "*Rooker-Feldman* . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Laymance alleges Walker violated his due process rights when she took J.D.L. on March 2, 2017. He asserts Hofstead and Shourd unlawfully arrested him on March 2 and March 3, 2017. These claims do not indicate an injury caused by the state-court judgment—which had not been entered at the time of the alleged unlawful conduct—even if the consequences of Defendants' actions somehow spilled over into the custody case. *See, for example, Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164-73 (3d Cir. 2010); *Stanley v. Finegan*, 356 F. Supp. 3d 779, 784-86 (W.D. Ark. 2018). As such, *Rooker-Feldman* does not apply.

Defendants also assert the affirmative defenses of *res judicata* and qualified immunity. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal citations omitted). Determining whether qualified immunity

applies involves two inquiries: whether the plaintiff's allegations make out the violation of a constitutional right and whether that right was clearly established at the time of the alleged unlawful acts. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may exercise discretion as to which prong is addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "To overcome qualified immunity, a plaintiff must be able to prove that 'every reasonable official would have understood that what he is doing violates' a constitutional right . . . and that the constitutional question was 'beyond debate.'" *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015).

Laymance asserts Hofstead, at Shourd's direction, unlawfully arrested him on March 2 and March 3, 2017. As to the March 2 arrest, an Amber Alert may provide reasonable suspicion to justify an investigative stop, just as a "wanted" flyer or be-on-the-lookout alert may. *See United States v. Hensley,* 469 U.S. 221 (1985); *U.S. v. Roberts*, 787 F.3d 1204, 1209-10 (8th Cir. 2015); *Davis v. Novy*, 433 F.3d 926, 930 (7th Cir. 2006). Once J.D.L. was seen in Laymance's car, arguable probable cause existed for Laymance's warrantless arrest on interference with child custody or a similar crime. "Probable cause is not a high bar." *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018) (internal citation omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Id.*) "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the

6

mistake is 'objectively reasonable.'" *Ehlers v. City of Rapid City*, 846 F.3 1002, 1009 (8th Cir. 2017). According to Laymance's pleadings, Hofstead held Laymance for several hours under the belief there was a warrant out of Texas for his arrest. Once Hofstead learned there was no warrant (and no probable cause) he released Laymance. *Doc. 23 at 7*. The Court finds no constitutional violation in connection with the March 2, 2017 arrest.

On March 3, 2017, Laymance was arrested pursuant to the Texas warrant on charges of interference with child custody. "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 568-69 (8th Cir. 1988). An arresting officer may, however, be found liable if he had knowledge that the arrest would be illegal despite the existence of the warrant. *See U.S. v. Leon*, 468 U.S. 897, 922 n.23 (1984); *Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994). Laymance has not challenged the facial validity of the warrant or alleged that Hofstead and Shourd knew the arrest would be illegal despite the warrant. Again, the Court finds no constitutional violation. Because there was no constitutional violation in connection with the March 2 or March 3 arrest, Shourd and Hofstead are entitled to qualified immunity.

Beyond the arrests, Laymance maintains J.D.L.'s removal was unlawful because Walker had no court order and because he had no notice of the TRO. *Doc.*

*42*. He also asserts Walker's Motion should be denied because the temporary injunction was issued only on March 3, while J.D.L. was taken from him already on March 2. *Doc. 45*. He does not dispute, however, and public records confirm, that when he took J.D.L. from the Von Compernolles the TRO had been issued. *Doc. 23 at 7, 11; Doc. 40-1 at 10-15*. And he explains that White County officers enforced the terms of the TRO, albeit he alleges they did so unlawfully. *Doc. No. 23 at 11*. Enforcement of the TRO following an Amber Alert resulted in J.D.L.'s removal from Laymance's care and placement with Walker.[6] The Court is not aware of law that "gave [Walker] 'fair warning that [her] alleged conduct was unconstitutional'" under these circumstances. *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008) (internal citation omitted). Rather, in deciding a motion to dismiss at least one other court in this Circuit found qualified immunity applies in a case with similar facts. *See Bowers v. Trinity Mother Frances Hospitals and Clinics*, case no. 4:11-cv-0331-JAJ, 2012 WL 2152830, at *3-4 (S.D. Iowa, May 9, 2012). Walker, too, is entitled to qualified immunity.

The Court will not address the additional affirmative defenses raised because its finds each of the Defendants is entitled to qualified immunity on Laymance's personal capacity claims. The Court notes, based on Laymance's email to counsel,

---

[6] While Laymance alleges Walker received J.D.L. from the paramedics, it is unclear from his pleadings specifically who kept the child until the Van Compernolles retrieved him and exactly what Walker's further actions with J.D.L. may have been.

that he appears to agree that Shourd and Hofstead are entitled to qualified immunity. *Doc. 44-1* (I . . . agree that at a minimum [Shourd and Hofstead] are entitled to qualified immunity . . . . I agree with the court dismissing the suit in its entirety against your clients.").

Just as Laymance's personal capacity claims fail, so do his official capacity claims. An official capacity claim is the equivalent of a claim against the defendant's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006). Laymance's official capacity claim against Walker is barred by the Eleventh Amendment and must be dismissed. *See Will*, 491 U.S. at 71. Laymance sued Anderson County, Texas, and White County, Arkansas, alleging the counties "directly caused the constitutional violations suffered by Plaintiff" because "[t]he conduct of the individual defendants was a direct consequence of the policies and practices of Defendant Counties." *Doc. 23 at 17*. All Anderson County officials were dismissed earlier; Laymance cannot establish that an Anderson County Defendant's conduct pursuant to policy violated his federally-protected rights. Further, this Court found no constitutional violation on the part of Shourd and Hofstead. Accordingly, Laymance's claims against Anderson County and White County also should be dismissed.

## III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Casey Walker's Motion for Judgment on the Pleadings, *Doc. 40*, be GRANTED.

2. Ricky Shourd and Paul Hofstead's Motion for Judgment on the Pleadings, *Doc. 41*, be GRANTED.

3. Laymance's claims against White County, Arkansas, and Anderson County, Texas, be DISMISSED.

4. This case be DISMISSED.

5. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation and accompanying Judgment would not be taken in good faith.

Dated this 18th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE